Jack I. Jmaev (CA-SBN: 216,416)
PURITAN LAW
500 N. STATE COLLEGE BLVD.,
    SUITE 1100
ORANGE, CA 92868
Phone: 657-999-8929

Attorney for Plaintiff
    WheelImage, Corp.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
CENTRAL DIVISION

| | |
|---|---|
| WheelImage, Corp. | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR** |
| Axial Manufacturing;<br>VF Engineering;<br>Rick Emmett;<br>Nik Saran;<br>Jonathan Tran; | **INJUNCTIVE RELIEF AND DAMAGES FOR**<br>**(a) CYBERPIRACY PURSUANT TO 15 U.S. CODE § 1125(d);**<br>**(b) DILUTION OF FAMOUS MARK PURSUANT TO 15 U.S. CODE § 1125(c); AND** |
| and | **(c) FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S. CODE § 1125(a).** |
| DOES 1 – 100, inclusive,<br>        Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

1

# COMPLAINT

Plaintiff WheelImage, Corp., a Delaware corporation, for its Complaint against Defendant Axial Manufacturing, a Delaware corporation; Defendant VF Engineering, a business of unknown character or origin; Defendant Rick Emmett, an individual; Defendant Nik Saran, an individual; Defendant Jonathan Tran, an individual; and DOES 1 – 100, inclusive, alleges as follows:

# JURISDICTION

1. This Court has jurisdiction pursuant 28 U.S.C. 1331 because this action alleges violations of federal statutes, including the Anti-Cybersquatting Consumer Protection Act (15 U.S. Code § 1125(a), 15 U.S. Code § 1125(c) and 15 U.S. Code § 1125(d)).

2. This Court has jurisdiction over the person of a defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure ("FRCP"). Because all Defendants, including Defendant Axial Manufacturing; Defendant VF Engineering; Defendant Rick Emmett; Defendant Nik Saran; Defendant Jonathan Tran; Defendant Matt Thomas; and Defendant Adrian Perez reside and/or are doing business in the State of California, and in this District, (see Paras. 12 – 21), this Court has jurisdiction to issue an order to enjoin all of the these Defendants pursuant to its *in persona* jurisdiction over these Defendants.

3. This Court has jurisdiction to render declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. This Court has pendant and supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within this District.

## NONPARTIES

6. In order to provide proper context for this Complaint, several nonparties must be introduced along with a description of their relevance to this action.

7. One such nonparty is Mr. Darwin Wongkar, now deceased. Mr. Wongkar ("Wongkar" or "nonparty Wongkar") was the nonparty that formed a California limited liability company called Verstrasse Group, LLC ("Verstrasse"), *see Ex. A*. When Verstrasse failed, Wongkar created the California corporation called Axial Manufacturing, now a defendant in this action.

8. Another nonparty is Mr. Wrigley Corales ("Wrigley" or "nonparty Wrigley"). Wrigley was briefly employed by Verstrasse but then, due to Verstrasse's financial difficulties, was converted to an independent contractor as described *infra*.

9. Rob Saslow is a nonparty who is now deceased. Mr. Saslow was appointed as the initial executor of Mr. Wongkar's estate. After Mr. Saslow passed away, he was replaced as executor of the estate by Mr. Rick Emmett, who is now a defendant in this action.

10. Charles Orozco is a nonparty. Mr. Orozco was initially employed by Verstrasse. After Verstrasse failed, Mr. Orozco was hired by Defendant Axial Manufacturing.

11. Hadrian Suciu ("Defendant Seciu") is an individual and is an independent contractor hired to promote various brands manufactured by Defendant Axial Manufacturing.

2

COMPLAINT

**THE PARTIES**

12. The Plaintiff in this action is WheelImage Corp. ("Plaintiff WheelImage"), a Delaware corporation. Plaintiff WheelImage Corp.'s primary place of business is 350 Ranger St. located in Brea, California. Plaintiff WheelImage is registered with the California Secretary of State as an out of state Corporation and is authorized to conduct business in California.

13. Axial Manufacturing ("Defendant Axial") is the primary Defendant in this action. Axial Manufacturing is a California Corporation doing business at 1205 N. Knollwood Cir, located in Anaheim, California.

14. VF Engineering is a Defendant. VF Engineering is a company that manufactures superchargers and maintains its primary place of business at 1191 North Knollwood Cir. in Anaheim, California. It is important to note that VF Engineering is located proximate to the primary place of business of Defendant Axial.

15. Defendant Rick Emmett ("Defendant Emmett"), an individual, is the current executor of Mr. Wongkar's estate and is the chief executive officer ("CEO") of Defendant Axial. Based on information and belief, Defendant Emmett resides in Anaheim, California.

16. Defendant Nik Saran ("Defendant Saran"), an individual, is believed to have been appointed by Defendant Emmett as the acting manager of Defendant Axial. Based on information and belief, defendant Saran resides in Irvine, California.

17. Defendant Jonathan Tran ("Defendant Tran"), an individual, is employed by Defendant Axial for the purpose of controlling social media, various websites and creating promotional media. Based on information and belief, Defendant Tran resides in Anaheim, California.

18. DELETED

19. DELETED

3

20. "DOES 1 through 100" are fictitious names. Their true names and capacities are unknown to Plaintiff WheelImage. When their true names and capacities are ascertained, Plaintiff WheelImage will amend this complaint by inserting their true names and capacities. Plaintiff WheelImage is informed and believes, and based on that information and belief alleges, that each of the defendants designated as a DOE is legally responsible in some manner for damages suffered by Plaintiff WheelImage.

21. Plaintiff WheelImage is informed and believes and thereon alleges that, at all times herein mentioned, Defendants, Axial, VF Engineering, Emmett, Saran, Tran, Thomas, Perez, and DOES 1-100, inclusive, were the agents of each other, and in doing the things herein alleged were acting within the course and scope of such agency and with the permission and consent of his or her Co-Defendant.

## **NATURE OF THE ACTION**

22. Central to this action is the ownership of a brand of vehicle wheels called "AL13 Wheels", also referred to as the "AL13 brand". There are several common law trademarks, including, but not limited to "AL13", "AL13 Wheels" and a stylized mark as shown here:



23. This action ensued, *inter alia*, as a result of intentional acts by Defendant Axial, its chief executive officer Defendant Emmett and its acting manager

Defendant Saran. Such intentional acts include cyberpiracy pursuant to U.S. Code § 1125(d), dilution of a famous mark pursuant to U.S. Code § 1125(c), false designation of origin pursuant to U.S. Code § 1125(a), infringement of common law trademarks, and defamation Pursuant to Cal. Civ. Code § 45.

24.  This action is also based on intentional acts by Defendant Saran in his personal capacity and his "business" Defendant VF Engineering including dilution of a famous mark pursuant to U.S. Code § 1125(c), false designation of origin pursuant to U.S. Code § 1125(a), and infringement of common law trademarks.

25.  Defendants Matt Thomas also engaged in defamation Pursuant to Cal. Civ. Code § 45.

26.  On or about November 22, 2023, Defendant Saran, at the direction of Defendant Emmett, hijacked the AL13 Instagram account. As of the filing of this Complaint, Plaintiff WheelImage has not been able to recover or gain access to this critical marketing tool, i.e. the Instagram account.

27.  On or about November 22, 2023, Defendant Saran, at the direction of Defendant Emmett, hijacked the domain "AL13WHEELS.COM", which rightfully belongs to Plaintiff WheelImage. Defendant Saran and Defendant Emmett, while acting as agents of Defendant Axial, hijacked the domain "AL13WHEELS.COM" even though they knew that the AL13 Wheels common law trademark was owned by Plaintiff WheelImage.

28.  On November 24, 2023, Plaintiff WheelImage was able to recover the "AL13wheels.com" domain using a personal identification number ("PIN"). A few hours after recovering the AL13wheels.com domain, it was again hijacked, this time by Defendant Emmett.

29.  Defendant Nick Saran, again at the behest of Defendant Emmett, sent a libelous communication to several persons (including business customers and vendors) alleging that Defendant Axial was the true owner of the AL13 brand.

5

Defendant Saran and Defendant Emmett, while acting as agents of Defendant Axial, made these libelous electronic communications even though they knew the statements therein were not true.

30.  Defendant Axial Manufacturing, knowing that Plaintiff WheelImage is the true owner of the now famous mark AL13 Wheels, is continuing to inappropriately assure Defendant Axial's customers that Defendant Axial is manufacturing AL13 Wheels and is actively and intentionally discouraging customers from purchasing AL13 Wheels from the true owner Plaintiff WheelImage.

31.  These are merely some examples of the tortious conduct engaged in by all defendants and additional factual allegations follow herewith.

32.  The content of all exhibits attached hereto is hereby incorporated into this Complaint by reference.

## FACTS COMMON TO ALL CLAIMS

### I.  VERSTRASSE GROUP, LLC

33.  This section describes the interaction between Wrigley and Wongkar in the early years and is supported by the declaration, under penalty of perjury, by Wrigley Corales, Ex. B. This section is also supported by the declaration, under penalty of perjury, of Charles Orozco, Ex. C.

### A.  History of Verstrasse

34.  Sometime prior to September 24, 2015, Wrigley met Wongkar. Wrigley and Wongkar decided to work together in order to create a machine shop contracting company. Such contracting companies, typically referred to as "job shops", offer machining services to independent customers. Wrigley was an engineer and computer aided manufacturing ("CAM") programmer. Wongkar believed that such a job shop could be formed based on the engineering skills proffered by Wrigley.

6

COMPLAINT

35. On September 24, 2015, Wongkar formed Verstrasse Group as a limited liability company, see Ex. A.

36. Shortly after its formation, Verstrasse Group, LLC ("Verstrasse") hired Wrigley as an employee. In exchange for working as an employee at reduced wages, Wongkar promised Wrigley a 20% stake in Verstrasse. See Ex. B, ¶4 and Ex. C ¶11.

37. For approximately a year, Wrigley worked for Verstrasse as an engineer and CAM programmer. During this time, Verstrasse engaged in its primary business model, that of being a job shop. During this time, Wrigley would receive designs from outside customers and develop machining strategies for products developed by Verstrasse's customers.

38. Verstrasse, using the machining strategies created by Wrigley, would manufacture products for its customers. These products, on many occasions, would be shipped as "private label" products under brand names and trademarks owned by Verstrasse's customers.

39. During Wrigley's first year of employment with Verstrasse, Wrigley received several payroll checks that were not backed by sufficient funds.

40. On or about December 1, 2016, Wrigley was converted to an independent contractor. This occurred because Verstrasse was not attracting enough job shop business to keep Wrigley employed on a full-time basis. Instead, Wrigley, working as an independent contractor, would receive customer designs from Verstrasse and develop machining strategies for these products. See Ex. B ¶8.

41. Beginning on or about December 1, 2016, Wrigley received payments from Verstrasse based on the number of designs for which he would develop machining strategies.

**B.    The "AL13 Wheels" Brand and Common Law Trademark**

42.    Beginning December 1, 2016, Wrigley realized the shortcomings of the Verstrasse business model, that being lack of a proprietary product line.

43.    Wrigley decided to develop his own wheel brand, which he called "AL13 Wheels".

44.    Wrigley discussed with Wongkar his plans for forming an independent wheel brand. Wongkar was eager to fund some of Wrigley's startup costs. Despite this, Wrigley made it clear to Wongkar that the AL13 brand and all designs and intellectual property associated therewith would remain the sole property of Wrigley. Wongkar agreed with this premise. See Ex. B ¶11.

45.    While working as an independent contractor for Verstrasse, Wrigley continued to develop machining strategies and CAM programs based on designs belonging to Verstrasse's customers.

46.    Because Wrigley did not have very much contract work from Verstrasse, he had ample time to develop the AL13 brand, including several wheel designs, logo designs and trademarks, all on his own time. He developed these wheel designs, logo designs and trademarks using his own resources and only his own labor, which was not compensated by Verstrasse or any other person or entity. Se Ex. B ¶12.

**C.    Implied License Granted to Verstrasse**

47.    While still an independent contractor, Wrigley allowed Verstrasse to manufacture and sell his wheel designs under his AL13 brand and common law trademark. Put simply, AL13 Wheels was just another "private label" brand manufactured by Verstrasse. Even though Verstrasse was manufacturing wheels under Wrigley's AL13 brand, Wrigley oversaw quality control and manufacturing standards to ensure consistently high quality products. Wrigley allowed Verstrasse to sell product under the AL13 common law trademark in order to promote the fame of his "AL13 Wheels" brand.

## II.   DEFENDANT AXIAL MANUFACTURING

48.   The section describes the interaction between Wrigley and Wongkar while working at a new job shop called Axial Manufacturing, one of the defendants here, and is supported by the declaration, under penalty of perjury, of Wrigley Corales, Ex. B. This section is also supported by the declaration, under penalty of perjury, of Charles Orozco, Ex. C.

### A.   Implied License Granted to Axial Manufacturing

49.   On or about May 9, 2018, Verstrasse's charter with the California Secretary of State was suspended. Based on information and belief, Wongkar failed to pay taxes to California's franchise tax board. See Ex. D.¶

50.   Instead of settling his tax obligations for Verstrasse, Wongkar formed a California corporation called Axial Manufacturing on July 10, 2018.

51.   Based on information and belief, all of the employees and contractors that were working with Verstrasse transitioned to become employees of Axial Manufacturing, see Ex. C ¶10. In other words, Defendant Axial is a successor in interest of Verstrasse. However, Wongkar did not carry his financial debt obligations from Verstrasse to Defendant Axial.

52.   Defendant Axial continued to manufacture AL13 brand wheels under an implied license to use Wrigley's common law trademark "AL13 Wheels" and associated logo and Wrigley continued to oversee the quality of products produced under his brand. Again, from Defendant Axial's perspective, AL13 wheels was just another "private label" brand.

### B.   Wongkar Acknowledges Wrigley's Ownership of AL13 Brand

53.   While employed by Defendant Axial, Wrigley performed engineering services for Defendant Axial's "private label" customers. The term "private label" refers to products manufactured by Defendant Axial and shipped to the distributors servicing Defendant Axial's private label customers. It should be noted that the products manufactured by Defendant Axial were shipped under

brand names, and trademarks owned by Defendant Axial's private label customers analogous to the AL13 private label products produced by Defendant Axial.

54. This is a common practice. In fact, before Plaintiff WheelImage Corp. had its own manufacturing capability, it used Verstrasse to manufacture wheels under Plaintiff WheelImage Corp.'s proprietary brands. Unfortunately, when Plaintiff WheelImage Corp. contracted with Verstrasse to manufacture its wheels, Verstrasse took monies from Plaintiff WheelImage but failed to deliver any products in exchange.

55. Even though there was no written agreement between Wrigley and Defendant Axial, Wongkar, Defendant Axial's sole shareholder, recognized that the AL13 brand was separate property belonging to Wrigley.

56. On August 19, 2021, Defendant Axial, by its owner and president Wongkar, signed a sales contract with Defendant Suciu wherein Wongkar recognizes three classes of products including "[1]AL13 Wheels, [2]All Axial brand of wheels and [3]all private label brands". See Ex. E, §1, second paragraph, bracketed numbers added here for clarity. This classification clearly acknowledges that "AL13 Wheels" is not a brand owned by Defendant Axial Manufacturing. Otherwise, this contract would have simply stated "All Axial brand of wheels and all private label brands".

## C. Death of Mr. Wongkar

57. Sometime in August 2022, Wongkar unfortunately passed away. As might be expected, this threw Axial Manufacturing into turmoil.

58. Approximately two weeks after Wongkar passed away, Wrigley met Rob Saslow. Rob Saslow had been appointed the administrator of Wongkar's estate. See Ex. B ¶¶ 17 – 19.

59. On or about August 27, 2021, Wongkar acknowledged in a text message to Wrigley that Wrigley would receive 20% of the proceeds resulting from the sale of Axial Manufacturing. See Ex. F.

60. Wrigley was building his brand in order to increase the value of Defendant Axial. And, his intention was to eventually assign to Defendant Axial his entire title, right and interest in the AL13 brand and associated common law trademarks and related designs and logos. To be clear, these were developed by Wrigley while he was an independent contractor servicing Verstrasse.

61. When Wongkar passed away, Hadrian Suciu began contacting distributors in order to circumvent Defendant Axial. In so doing, Defendant Suciu began marketing as his own version of the AL13 brand and its associated designs as a competitor to Defendant Axial.

62. In order to protect his brand and his stake in the proceeds of a potential sale of Defendant Axial, Wrigley filed an application for a trademark with United States Patent and Trademark Office. This is aptly described is an email sent by Wrigley to Loren Castro, counsel for Wongkar's estate, see Ex. G.

**D.    Saran's Failure to Purchase Axial**

63. Sometime in December 2022, Rob Saslow, the initial administrator of Wongkar's estate, told Wrigley that he had outlined with Defendant Saran a letter of intent for the purchase of Axial Manufacturing. See Ex. B ¶21.

64. Sometime in early March 2023, Defendant Saran called Wrigley to confirm that Wrigley would assign the AL13 brand to Defendant Axial Manufacturing once Defendant Saran purchased Axial. See Ex. B ¶22.

65. On June 7, 2023 Wrigley sent an email to Defendant Saran in order to reassure him that Wrigley would be transferring the AL13 trademark as was discussed between Defendant Saran and Wrigley, but, there was a condition precedent requiring Defendant Saran to purchase all of Defendant Axial's

assets. See Ex. H at the callout referencing the June 7, 2023 email exchange. See Ex. B ¶23.

66. On November 17, 2023 and *almost a year* since the letter of intent was drafted between Defendant Saran and Rob Saslow, Wrigley revoked all offers to assign his intellectual property rights to Defendant Axial.

67. The primary reason for revoking his offer to assign the AL13 brand, designs and trademarks was that Defendant Saran was utilizing Defendant Axial's resources even though he had not yet purchased the company.

68. What was even more bewildering was the fact that the new administrator, Defendant Rick Emmett, had instated himself as chief executive officer of Defendant Axial, see Ex. I. And, on or about October 26, 2023, Defendant Emmett appointed Defendant Saran as Defendant Axial's acting manager. See Ex. C ¶¶ 16 – 21.

69. All of these factors indicated clearly that there was no intent for Defendant Saran to purchase Defendant Axial. Rather, it was apparent that Defendant Saran, in league with Defendant Rick Emmett, would continue to operate Defendant Axial without actually acquiring its assets.

70. Put plainly, Defendant Saran and Defendant Emmett appeared to have consorted to defraud the estate of Wongkar and also to circumvent any payments due to Wrigley and Orozco resulting from the proceeds from any sale of Defendant Axial and/or its assets.

**III.    AL13 BRAND TRANSFERRED TO WHEELIMAGE CORP.**

   **A.    Initial Contact**

71. Acquisition of the AL13 brand by Plaintiff WheelImage was serendipitous. Plaintiff WheelImage was not necessarily interested in procuring the AL13 brand, but was searching for an experienced lathe programmer.

72. On October 25, 2023, Nonparty Orozco and Wrigley had learned that Defendant Axial's financial accounts were to be closed on November 23,

2023. And, there was silence as to continued payroll for all of Defendant Axial's employees.

73. The high-performance wheel industry as only a few superstars. One such superstar was Charles "Vince" Orozco. David Batarseh of WheelImage Corp. initially contacted Charles Orozco in order to offer him a position as a lathe programmer at WheelImage Corp. At this juncture Plaintiff WheelImage had no idea there was an opportunity to acquire the AL13 brand.

**B.    Orozco and Wrigley Pending Exit from Axial Manufacturing**

74. On or about November 15, 2023 and because they knew of the impending financial shutdown of Defendant Axial, Charles Orozco and Wrigley invited David Batarseh of WheelImage Corp. to Axial's facility. It was on this occasion that Charles Orozco and Wrigley explained to David Batarseh of WheelImage that most of Axial's employees were about to leave because of Axial's financial instability. See Ex. B ¶¶ 26 – 27.

75. Plaintiff WheelImage Corp. then extended an open offer of employment to anyone that had decided to leave the employ of Defendant Axial. See Ex. B ¶29. Except for Orozco, Plaintiff WheelImage never solicited to hire Defendant Axial's employees.

76. Wrigley discussed the possibility of assigning to Plaintiff WheelImage his entire title, right and interest in the AL13 brand.

77. On November 17, 2023, Plaintiff WheelImage Corp. seized the opportunity and acquired the entire right, title and interest in the AL13 brand, and its associated designs and trademarks.

**IV.    CYBERPIRACY IN VIOLATION OF 15 U.S. CODE § 1125(d)**

**A.    Plaintiff Informs Defendant of Purchase of AL13 Brand**

78. On or about November 22, 2023, attorneys for Plaintiff WheelImage, Jack I. Jmaev and Sunanda Pandy, participated in a telephone conference with

13

attorney William Palmer representing Defendant Axial and Loren Castro representing the estate of Wongkar.

79.   During this conversation, attorneys for Plaintiff WheelImage clearly explained to Mr. Palmer and Mr. Castro that Plaintiff WheelImage had acquired the entire title, right and interest in the AL13 brand.

80.   Attorneys for Plaintiff WheelImage further elucidated that the AL13 brand was independently developed by Wrigley while Wrigley was an independent contractor servicing Verstrasse. Instead of accepting these facts, Mr. Palmer and Mr. Castro demanded evidence that Wrigley actually owned the mark independent of Defendant Axial.

81.   Plaintiff WheelImage's attorneys and attorneys Palmer and Castro agreed to continue this telephone conference on Monday, November 27, 2023. All parties agreed that additional fact-finding would be necessary to resolve the issues raised in this Complaint.

   **B.     The Cyberpiracy**

82.   On November 21, 2023, a "lawyer" instructed Defendant Tran not to provide login information for the AL13wheels.com website, see Ex. J. Initially, however, Defendant Tran was prepared to provide access to Plaintiff WheelImage information for the AL13wheels.com website and the AL13 Instagram account. This notwithstanding, Wrigley owned the AL13 wheels common law trademark and also had access to the AL13wheels.com website and the AL13 Instagram account.

83.   On November 22, 2023 and despite the short armistice agreed to by counsel for Defendant Axial and the estate of Wongkar, Defendant Saran accessed AL13wheels.com website administration and prevented Wrigley from further use of this valuable domain.

84.   When Plaintiff WheelImage discovered the cyberpiracy, it successfully regained access to the AL13wheels.com website. Within the span of a few

hours, Defendant Emmett accessed AL13wheels.com website administration to again preclude plaintiff WheelImage from using this most valuable resource.

85. Based on information and belief, Plaintiff WheelImage alleges that Defendant Tran supported and participated in such tortuous conduct as proscribed by 15 U.S. Code § 1125(d).

86. On November 22, 2023, Wrigley was able to recover access to the AL13wheels.com website using a personal identification number ("PIN") which he established when he registered the "AL13wheels.com" domain.

87. It should be noted that the AL13 brand has achieved prominence, as demonstrated by having nearly 400,000 followers on its Instagram account. See Ex. K. Plaintiff WheelImage notes that Defendant VF Engineering has been added to the AL13 Wheels Instagram account and that AL13 is purportedly associated with Defendant Axial. This is clear evidence that these Defendant are attempting to influence AL13 followers and lure them to Defendant Axial and Defendant VF Engineering to Plaintiff WheelImage's detriment.

88. As of the filing of this Complaint, Plaintiff WheelImage is not been able to recover access to the AL13 Instagram account.

89. Defendants Axial, VF Engineering, Emmett, Saran and Tran all new that Plaintiff WheelImage is the rightful owner of the AL13 brand and despite this, intended in bad faith to profit from the AL13 brand and its associated trademarks including, but not limited to "AL13 Wheels" and the stylized mark set forth in paragraph 22 of this Complaint.

90. All defendants, and especially Defendants Axial, VF Engineering, Emmett, and Saran are using Plaintiff WheelImage's AL13 Instagram account to divert customers from a Plaintiff WheelImage to Axial Manufacturing and VF Engineering.

### C.    Confusingly Similar Domains

91.    Defendants Axial, VF Engineering, Emmett, Saran and Tran further transgress 15 U.S. Code § 1125(d) in that they have established additional domains that are confusingly similar to that of those Internet addresses that promote the AL13 brand, for example an Instagram account called AL13WheelsOfficial.

## CLAIMS

## FIRST CLAIM FOR RELIEF

## (CYBERPIRACY IN VIOLATION OF 15 U.S. CODE § 1125(d))

## AS TO

## DEFENDANTS AXIAL MANUFACTURING, VF ENGINEERING, RICK EMMETT, NIK SARAN, JONATHAN TRAN

## AND DOES 1 – 100

92.    Plaintiff WheelImage Corp. incorporates by reference the allegations of paragraphs 1 through 91 as though fully set forth herein.

93.    As laid out more fully above, Defendants Axial, VF Engineering, Emmett, Saran and Tran intentionally accessed the website administration of AL13wheels.com and changed access credentials to prevent plaintiff WheelImage from accessing and using this valuable domain. Then, Wrigley regained rightful access to AL13wheels.com for WheelImage, only to have Defendant Emmett again wrongfully access the website administration of AL13wheels.com and prevent WheelImages's access. Furthermore, Defendants Axial, VF Engineering, Emmett, Saran and Tran have taken control of the AL13 Instagram account and prevented WheelImage from rightful access.

94.    Additionally, on information and belief Defendants Axial, VF Engineering, Emmett, Saran and Tran have used AL13wheels.com and the AL13 Instagram

account to profit from the above identified AL13 brand, trademarks, and marks in order to profit from these marks. As can be readily appreciated, an online presence is a key marketing, sales, and business tool in the modern world where many consumers do not even trust companies if they do not maintain a reputable online presence.

95. When determining bad faith intent, 15 USC 1125(d) lays out enumerated factors for consideration. Defendants Axial, VF Engineering, Emmett, Saran and Tran have shown their bad faith under the following enumerated factors:

a. They have no right to the AL13 brand, trademarks, and marks which are rightfully owned by WheelImage. In fact, as laid out above, on information and belief, Defendant Saran was appointed as an acting manager, specifically to avoid the need to purchase Axial and pay for the valuable AL13 brand, trademarks, and marks. Essentially, Defendants wanted to eat their cake and have it too by inappropriately accessing and utilizing the AL13 brand, trademarks, and marks for a profit without paying for those assets. As such, factor 15 USC 1125(d)(1)(B)(i)(I), weighs heavily for Plaintiff WheelImage.

b. As laid out above, Defendant Axial does not own the AL13 brand, trademarks, and marks and does not have rightful use of the AL13wheels.com domain or AL13 Instagram account. Furthermore, none of Defendants Axial, VF Engineering, Emmett, Saran and Tran's names appear in "AL13wheels.com" or in the official name of the AL13 Instagram account. As such, factor 15 USC 1125(d)(1)(B)(i)(II), weighs heavily for Plaintiff WheelImage.

c. As laid out above, Defendants Axial, VF Engineering, Emmett, Saran and Tran have wrongfully accessed and taken control of the AL13wheels.com domain and AL13 Instagram account. On information and belief, they continue to use and access these in order to divert

17

customers away from WheelImage's websites and access to harm the goodwill of AL13 brand, trademarks, and marks for commercial gain. Furthermore, Defendants have reached out to customers / vendors inappropriately claiming rightful use of the AL13 brand, trademarks, and marks which has created a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the AL13 brand, trademarks, and marks and the above domains. Also, on information and belief Defendants have done this for an entirely commercial purpose not under any noncommercial or fair use. As such, factor 15 USC 1125(d)(1)(B)(i)(V), weighs heavily for WheelImage.

96. As such, Defendants Axial, VF Engineering, Emmett, Saran and Tran had a bad faith intention to profit from the AL13 brand, trademarks, and marks.

97. Furthermore, as laid out above, Defendants Axial, VF Engineering, Emmett, Saran and Tran on information and belief have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) to sell products. As such, Defendants have trafficked in and used the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) for commercial use.

98. As such, Defendants have violated 15 USC 1125(d) and WheelImage is entitled to an order from the Court to force transfer of the AL13wheels.com domain, the AL13 Instagram account, and any other domains and accounts created by the Defendants that are derivative of these and the AL13 brand, trademarks, and marks.

99. By preventing Plaintiff WheelImage from controlling the AL13 Instagram account, Defendants Axial, VF Engineering, Emmett, Saran and Tran are preventing Plaintiff WheelImage from enjoying $6,000,000 worth of annual sales, which represents $4,000,000 of profit for Plaintiff WheelImage.

**SECOND CLAIM FOR RELIEF**

**(DILUTION OF FAMOUS MARK**

**PURSUANT TO 15 U.S. CODE § 1125(c))**

**AS TO**

**DEFENDANTS AXIAL MANUFACTURING, VF ENGINEERING, RICK EMMETT, NIK SARAN, JONATHAN TRAN**

**AND DOES 1 – 100**

100.  Plaintiff WheelImage Corp. incorporates by reference the allegations of paragraphs 1 through 99 as though fully set forth herein.

101.  As laid out above, WheelImage is the rightful owner of the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account). It should be understood that the high end vehicle wheel industry is a small world. This is partly because these wheels are intended to be used on various hypercars such as Ferrari, Lamborghini, Porsche, McLaren, and various others. These are inherently luxury items that are paired with other high end luxury items. As such, reputation and word of mouth are vitally important and it's a very small world of customers that can afford and purchase such items. Despite this, AL13 has managed to accumulate a significant following and brand in this small world. This can clearly be seen in its AL13 Instagram account which has at least 398,000 followers as of November 26, 2023.

102.  While 398,000 followers may not seem a huge audience when viewed against the entire consuming public of the United States, it is still a significant following inside this microcosm of high end vehicle wheels. Based on this accumulated reputation, AL13 brand, trademarks, and marks are famous and distinctive.

103.  As laid out above, after the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) had already become

19

famous by the time Defendants Axial, VF Engineering, Emmett, Saran and Tran inappropriately accessed and took control of the AL13wheels.com domain and the AL13 Instagram account.

104. Furthermore, as laid out above, Defendants Axial, VF Engineering, Emmett, Saran and Tran on information and belief have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) in commerce and this use is likely to cause dilution by blurring or tarnishment of this famous mark.

105. Additionally, on information and belief Defendants Axial, VF Engineering, Emmett, Saran and Tran cannot claim any form of fair use and do not engage in any noncommercial use as their use is entirely devoted to diverting sales and customers from WheelImage to Defendants. Also, Defendants were entirely aware of how famous the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) were in this industry and on information and belief willfully intended to trade on that reputation

106. As such, Defendants have violated 15 USC 1125(c) and WheelImage is entitled to an injunction from the Court to stop such inappropriate use. Furthermore, WheelImage is entitled to disgorgement of profits made by Defendants in an amount to be determined at trial after an accounting, payment of WheelImage's damages for the inappropriate use, and costs of this suit.

# THIRD CLAIM FOR RELIEF

## (FALSE DESIGNATION OF ORIGIN

## PURSUANT TO 15 U.S. CODE § 1125(a))

## AS TO

## DEFENDANTS AXIAL MANUFACTURING, VF ENGINEERING, RICK EMMETT, NIK SARAN, JONATHAN TRAN

## AND DOES 1 – 100

107. Plaintiff WheelImage Corp. incorporates by reference the allegations of paragraphs 1 through 106 as though fully set forth herein.

108. As laid out above, WheelImage is the rightful owner of the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account). However, Defendants Axial, VF Engineering, Emmett, Saran and Tran inappropriately accessed and took control of the AL13wheels.com domain and the AL13 Instagram account. On information and belief, Defendants have and continue to use these marks for their own commercial use and profit in commerce. Furthermore, Defendants' continued inappropriate use of the AL13 brand, trademarks, and marks is a false designation of origin and misrepresentation as they are owned by WheelImage and are inappropriately used without permission.

109. Furthermore, as laid out above, Defendants Axial, VF Engineering, Emmett, Saran and Tran on information and belief have inappropriately continued to use the AL13 brand, trademarks, and marks (including AL13wheels.com and the AL13 Instagram account) in commerce and this use is likely to cause confusion and mistake as customers and vendors will believe that Defendants have permission to use such marks when they are in fact owned by WheelImage. Further, this will cause confusion, deception, and mistake that these Defendants are allowed to sell products under the AL13 brand, trademarks, and marks when this use is not permitted. This will also cause

21

confusion, deception, and mistake that these Defendants are affiliated with the AL13 brand WheelImage when this is not true. This will also cause confusion, deception, and mistake that Defendants' products originate, are sponsored by, or are approved by the AL13 brand when this is not true.

110. Also, as laid out above, Defendants Axial, VF Engineering, Emmett, Saran and Tran on information and belief have inappropriately taken control of AL13wheels.com and the AL13 Instagram account. On information and belief, they have and continue to use these online avenues to market and sell products in commerce. They also use them for commercial advertising and promotion in commerce. As such, Defendants are also misrepresenting the nature, characteristics, and geographic origin of these goods by claiming they are authorized AL13 brand products when they are not.

111. As such, WheelImage is damaged in an amount to be determined at trial after an accounting.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, WheelImage, requests that this Court find in its favor and against and grant Plaintiff the following relief:

A.    An injunction to require transfer of the AL13 Instagram account to WheelImage;

B.    That Judgment be against Defendants for at least $4,000,000 in lost profit;

C.  That Plaintiff WheelImage Corp be awarded its attorneys' fees;

D.    That Plaintiff WheelImage Corp be awarded costs and expenses in this action;

E.    An award of prejudgment and post-judgment interest; and

F.    Such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.


DATED: November 26, 2023                    Respectfully submitted,
                                            /s/ Jack I. Jmaev
                                            SBN 216,416
                                            Attorney for
                                            Plaintiff WheelImage Corp
                                            Puritan Law
                                            500 N. State College Blvd.
                                            Suite 1100
                                            Orange, CA 92868

23